■ Art Finance Partners, LLC, et al., Appellants, v Christie's Inc., Respondent and Counterclaim Plaintiff-Respondent. Art Finance Partners, LLC, et al., Counterclaim Defendants-Appellants. [870 NYS2d 331]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered January 18, 2008, which denied the motion of plaintiffs and counterclaim defendants (collectively the Rose entities) for summary judgment on the complaint for monies paid to defendant Christie's and to dismiss Christie's defenses and counterclaims, unanimously affirmed, with costs.

This case arises from an alleged attempt to manipulate an art

auction at Christie's by the Rose entities, acting in concert with the art dealers at Berry-Hill Galleries, the owner of the artwork. Andrew Rose consigned the artwork to Christie's for auction, claiming he was acting for an unnamed divorcing couple, then bid on the artwork himself. Christie's standard consignment agreement prohibits a consignor (both principal and agent) from bidding on the consigned property at the auction. Berry-Hill also bid on the artwork. When Christie's discovered that Coram Capital LLC, a special purpose entity formed by the owners of Berry-Hill, was the true owner of the artwork and that Berry-Hill knew in advance of the auction that Andrew Rose had misrepresented the ownership, Christie's canceled all sales of the artwork, offered rescission to purchasers of artwork from the consignment that also had been bid on by Andrew Rose or Berry Hill, and, inter alia, withheld proceeds to mitigate its anticipated damages. After Berry-Hill and Coram filed for bankruptcy protection, they commenced an adversary proceeding against Andrew Rose alleging fraud. Berry-Hill agreed to a settlement with Christie's, pursuant to which Christie's retained a claim for $3 million for the canceled sale of a particular painting and a claim for $1 million for actual damages related to the auction. The settlement agreement contained mutual releases of the named parties and, inter alia, their "agents" from any and all claims.

Andrew Rose tried unsuccessfully to reach his own settlement with Christie's for the return of funds he paid for items at the May 19, 2005 auction for which he was the highest bidder. Ultimately, plaintiffs, which are entities owned by Andrew Rose, commenced this action alleging breach of contract and unjust enrichment. In its answer, Christie's asserted counterclaims alleging, inter alia, fraud and breach of contract, including a cause of action against all counterclaim defendants styled, "Fraud As An Agent." In moving for summary judgment on the complaint for the return of money paid to Christie's and to dismiss Christie's counterclaims, the Rose entities argued that the settlement agreement between Berry-Hill and Christie's released them from Christie's counterclaims as Berry-Hill's "agent."

The court correctly rejected this argument. The mutual releases were not "clear and unambiguous as to the intention of the parties to cover the amount in dispute" (*NAB Constr. Corp. v City of New York*, 276 AD2d 388, 389 [2000]). Thus, as to the scope of the releases, "reference to parol evidence to discern the intentions of the parties [was] appropriate" (*id.* at 390). The purpose of the agreement was to resolve the disputes between

Berry-Hill and Christie's in the context of the Berry-Hill bankruptcy. Berry-Hill paid consideration to Christie's in addition to granting the releases. Further, Berry-Hill had no authority to release Andrew Rose's claim against Christie's, as Rose stated in an affidavit, and Christie's made clear that it had no intention of resolving the dispute with Rose for no consideration; it wanted to pursue its legal claims against him. Thus, at a minimum, factual issues exist whether the agreement between Berry-Hill and Christie's operated to release the counterclaim defendants as Berry-Hill's "agent."

There is no evidence that Rose actually acted as an agent for Berry-Hill. A principal-agent relationship may be established by evidence of the "consent of one person to allow another to act on his or her behalf and subject to his or her control, and consent by the other so to act" (*Fils-Aime v Ryder TRS, Inc.*, 40 AD3d 917, 918 [2007] [internal quotation marks and citation omitted]), even where the agent is acting as a volunteer (*see* Restatement [Second] of Agency § 225). However, the artwork that was consigned to Christie's was collateral for a loan to Berry-Hill from Rose through plaintiff ARCK Credit Company, and Rose was acting for his own benefit—to inflate collateral proceeds—when he contacted Christie's with a proposal to sell Berry-Hill's inventory, purportedly on behalf of a divorcing couple.

We have considered counterclaim defendants' remaining arguments and find them unavailing. Concur—Andrias, J.P., Nardelli, Moskowitz, Renwick and Freedman, JJ.